# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DOUGLAS W. HIGGINS,

**Plaintiff,**

v.                                      Case No. 21-CV-1021

CATALYST EXHIBITS, INC., et al.,

**Defendants.**

# DECISION AND ORDER

Plaintiff Douglas W. Higgins brought this lawsuit in state court in South Carolina against defendants Catalyst Exhibits, Inc. ("Catalyst"), Tru Services Group, Inc. ("Tru"), Timothy Roberts, and David Larsen. The defendants removed the action to federal court and then moved to dismiss the complaint for lack of jurisdiction or, alternatively, to transfer the action to the Eastern District of Wisconsin. (ECF No. 9.) On August 31, 2021, the United States District Court for the District of South Carolina entered an order transferring the case to this court. (ECF No. 14.)

The defendants have filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. (ECF No. 21.) The motion is fully briefed and

ready for resolution. All parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 24, 26.)

## 1. Background

Catalyst, located in Pleasant Prairie, Wisconsin, provides custom exhibits, fabrications, rental exhibits, and exhibit programs for trade shows and conventions. (ECF No. 1-1, ¶ 8.) Tru, also located in Pleasant Prairie, Wisconsin, provides labor for Catalyst, as well as for other companies, installing and dismantling trade show and convention exhibits. (*Id.*, ¶ 9.) Roberts is the president of both Catalyst and Tru. (*Id.*, ¶ 10.) Larsen is the general manager of both Catalyst and Tru. (*Id.*, ¶ 11.)

Prior to 2019, Higgins worked as account executive at Nth Degree, a client of Catalyst and a direct competitor of Tru, for over thirty years. (ECF No. 1-1, ¶¶ 18, 23.) He was one of Nth Degree's most successful salespeople. (*Id.*, ¶ 22.) Beginning in early 2018 Roberts and Larsen tried to recruit Higgins away from Nth Degree. (*Id.*, ¶¶ 25-39; ECF No. 22 at 2). In January 2019 they agreed to guarantee Higgins two years of employment with a salary of $275,000. (ECF No. 1-1, ¶ 33.)

On January 7, 2019, the defendants presented Higgins with a letter setting forth the terms of an agreement. The letter stated, in relevant part, "You will be paid a non-recoverable draw in the amount of $275,000 guaranteed for 2 years." (ECF No. 1-1, ¶ 35.) In June 2019 Higgins signed the letter and mailed it to the defendants. (*Id.*, ¶ 40.)

In his complaint Higgins refers to the letter as an "employment contract." (*See, e.g., id.*, ¶ 35.)

Higgins began working for the defendants on July 9, 2019. (ECF No. 1-1, ¶ 44.) On March 5, 2020, Larsen and Human Resources Director Amanda Hanna told Higgins that his employment was terminated. (*Id.*, ¶ 46.) He was told that his termination was not performance related but was instead due to financial problems caused by the COVID-19 pandemic. (*Id.*) Higgins alleges that this explanation was false because an account executive was immediately hired to replace him—"if [d]efendants were having financial difficulties as they claimed, they could not have afforded to replace [Higgins] with another account executive." (*Id.*, ¶ 48.)

In this lawsuit Higgins brings several claims, naming Tru, Catalyst, Roberts, and Larsen as defendants to each: breach of contract, "fraud/fraud in the inducement," negligent misrepresentation, and promissory estoppel. (*See* ECF No. 1-1.) He also requests "declaratory judgment that [d]efendants breached the employment contract they entered with [Higgins]; that "[d]efendants committed fraud and fraud in the inducement"; that "[d]efendants committed negligent misrepresentation"; and "stopping [d]efendants from revoking the promise they made to [Higgins]." (*Id.*, ¶¶ a-d.) The defendants have moved to dismiss each of Higgins's claims. (*See* ECF Nos. 21, 22.)

## 2. Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiffs." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

## 3. Analysis

### 3.1. Breach of Contract

Higgins alleges a breach of contract claim against "all defendants"—Tru, Catalyst, Roberts, and Larsen. (ECF No. 1-1 at 7.) He claims that he signed an employment contract with the defendants in June 2019 and that the defendants breached that contract when they terminated him less than a year later in March 2020. (*See id.*, ¶¶ 57-61.) He claims that this alleged breach has caused him to suffer "stress, anxiety, depression, and financial hardship." (*Id.*, ¶ 51.)

"In general, a court may only consider the plaintiff's complaint when ruling on a Rule 12(b)(6) motion." *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) (quoting *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002)). "However, Federal Rule of Procedure 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes,'" and "this rule includes a limited class of attachments to motions to dismiss pursuant to Rule 12(b)(6)." *Id.* Indeed, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006).

Higgins's employment contract was not attached to his complaint as it has been filed in this court. It may have been attached to the complaint that he originally filed in state court in Beaufort County, South Carolina: his complaint quotes the contract and refers to it as "Exhibit A." (*See* ECF No. 1-1, ¶ 35.) Regardless, the contract is attached to the defendants' motion to dismiss. (*See* ECF No. 22-l.) And, as noted above, it is referenced in Higgins's complaint and central to his breach of contract claim. (*See* ECF No. 1-1.) Therefore, the employment contract is part of the pleadings and may be considered at this stage in the proceeding.

The employment contract is printed on Tru Service Group letterhead. (*See* ECF No. 22-1). The first sentence reads: "Tru Service Group is delighted to extend an offer to [Higgins] for the position of Account Executive, pending a clear background check." (*Id.*

at 1.) The contract directs Higgins to "report directly to Dave Larsen." (*Id.*) And, as noted above, it states that Higgins "will be paid a non-recoverable draw in the amount of $275,000 guaranteed for 2 years." (*Id.*) It also describes Higgins's benefits and directs him to contact "amandah@truservicegroup.com" should he have any questions about them. (*Id.* at 2.) It concludes, "Doug, we are all excited about you joining Tru Service Group." (*Id.*)

### 3.1.1. Breach of Contract Against Tru

The defendants argue that Higgins's breach of contract claim against Tru should be dismissed because he was an at-will employee and therefore "terminable for any reason or no reason at all." (ECF No. 22 at 10.) The defendants argue that, when Higgins signed the Tru Employee Handbook, he acknowledged that he was an at-will employee. (*Id.*) The Tru Employee Handbook, they argue, did not create "a contract for employment of any particular period of time" and also stated that Higgins "could be terminated for any reason." (*Id.*)

Higgins disagrees, arguing that he was not an at-will employee because his employment was for a definite period of time. (ECF No. 29 at 8-9.) He points to the language from the employment contract that states he "will be paid a non-recoverable draw of $275,000 *guaranteed for two years,*" for support. (*Id.* at 9) (emphasis in original.) Higgins argues further that he "has alleged a valid claim for breach of contract" because he has alleged "that the parties formed a valid contract," that Tru breached the contract

by not paying him the amount guaranteed in the contract, and that "he incurred damages in the form of lost wages" because of that breach. (*Id.* at 10.) Therefore, his breach of contract claim against Tru should be allowed to proceed.

As stated above, when ruling on a motion to dismiss this court may consider documents attached to a motion to dismiss only when those documents are referred to in the plaintiff's complaint and are central to his claim. *See Burke*, 714 F.3d at 505 (citing *McCready*, 453 F.3d at 891). Higgins does not refer to the Tru Employee Handbook in his complaint. Therefore, the Tru Employee Handbook cannot be considered on the motion to dismiss. *See id.* (citing *McCready*, 453 F.3d at 891).

Moreover, pointing to and relying on the employment contract, Higgins alleges that he and Tru entered into a two-year contract, that Tru breached that contract, and that he suffered damages as a result. (*See, e.g.*, ECF No. 1-1, ¶¶ 51, 58). Therefore, he has sufficiently pled a breach of contract claim against Tru. *See Brew City Redevelopment Grp., LLC v. The Ferchill Grp.*, 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 807, 714 N.W.2d 582, 588 ("A complaint states a claim for breach of contract when it alleges: (1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages." (citing *Nw. Motor Car, Inc. v. Pope*, 51 Wis. 2d 292, 296, 187 N.W.2d 200, 203 (1971))). Consequently, the defendants' motion to dismiss Higgins's breach of contract

claim against Tru will be denied, and Higgins's breach of contract claim against Tru can proceed.

### 3.1.2. Breach of Contract Against Catalyst

Higgins alleges that he and Catalyst entered into a two-year contract, that Catalyst breached that contract, and that he suffered damages as a result. (*See, e.g.*, ECF No. 1-1, ¶¶ 51, 58.) The only mention of Catalyst in the employment contract comes under the section labeled, "Compensation":

> In addition, any exhibit sales for Catalyst Exhibits will be paid at 10% commission for client you maintain full involvement with and 3% for referrals that sell. This commission will count towards your draw and will be paid by Catalyst Exhibits to Tru Service Group in your behalf.

(ECF No. 22-1 at 1.)

The defendants argue that Higgins's breach of contract claim against Catalyst should be dismissed because Higgins was employed by Tru, not by Catalyst. (ECF No. 22 at 4-5.) They argue that Higgins has not pled the facts necessary to demonstrate that Tru and Catalyst were operating as joint enterprise or to show that Higgins "ever did anything for any company other than Tru or that he was actually controlled by anyone other than Tru." (*Id.* at 5.)

Citing a five-factor test that the Court of Appeals for the Seventh Circuit uses "to determine whether a joint relationship exists for the purposes of [Title VII, the ADEA, and the ADA]," Higgins maintains that he "has pled a prospective joint employer

relationship so as to survive" the defendants' motion to dismiss. (ECF No. 29 at 6-7.) Summarily, he argues that

> both companies employed him. Both companies benefited from his work, both companies exercised control over him, both companies shared management, employees, office space, equipment and had common ownership. Moreover, Tru and Catalyst were interrelated and shared a common business purpose and constituted a joint venture and/or joint enterprise such that [Higgins] was employed by both.

(*Id.* at 7-8.)

The joint employer doctrine applies in Title VII cases, Age Discrimination in Employment Act cases, and Americans with Disabilities Act cases. *See, e.g.*, *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377 (7th Cir. 1991). It also applies in Fair Labor Standards Act cases, *see, e.g.*, *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206 (7th Cir. 1986), and in Family and Medical Leave Act cases. *See, e.g.*, *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 641 (7th Cir. 2008). But Higgins has not cited authority suggesting that the doctrine applies to breach of contract cases. Therefore, the defendants' motion to dismiss is granted with regard to Higgins's breach of contract claim against Catalyst. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 679, (2009) (a complaint must state a plausible claim for relief to survive a motion to dismiss).

### 3.1.3. Breach of Contract Against Roberts and Larsen

The defendants argue that Higgins's breach of contract claim against Roberts and Larsen should be dismissed because Higgins "has not pled any reason for the court to disregard Tru's corporate form." (ECF No. 22 at 4.) For example, Higgins "has not

alleged any elements to establish the elements for veil piercing or even the bare legal conclusions to pierce the veil." (ECF No. 30 at 2.)

Higgins responds that it would be "premature" to dismiss Roberts and Larsen at this stage in the litigation "because Higgins has not gotten a judgment against the corporations and by that same token the corporations have not failed to pay." (ECF No. 29 at 4.) But, even still, he "has pled sufficient facts at this stage of the litigation to pierce the corporate veil." (*Id.*) For example, he alleges that Robert and Larsen "regularly exercised the authority to hire and fire employees, set the terms of employment for [Higgins]. And control the finances and operations of Tru and Catalyst." (*Id.* at 5.)

"[C]orporate officers are generally not liable for contract violations of a corporation." § 1117. General Considerations, 3A Fletcher Cyc. Corp. § 1117. Indeed, "[b]y legal fiction the corporation is a separate entity and is treated as such under all ordinary circumstances." *Milwaukee Toy Co. v. Indus. Comm'n*, 203 Wis. 493, 234 N.W. 748, 749 (1931). And this "legal fiction' of a corporation is not one to be lightly disregarded." *Consumer's Co-op. of Walworth Cty. v. Olsen*, 142 Wis. 2d 465, 474, 419 N.W.2d 211, 213 (1988).

But there are "exceptions justifying, metaphorically, the 'piercing of the corporate veil' or, stated otherwise, 'disregarding the corporate fiction.'" *Consumer's Co-op.*, 142 Wis. 2d at 475, 419 N.W.2d at 214. "With regard to the sufficiency of the complaint the court must be mindful that, at the motion to dismiss stage, where the plaintiff has not

yet had the benefit of discovery, a plaintiff is likely to be at a distinct disadvantage in alleging facts relevant to whether an entity's corporate veil should be pierced." *Aimers v. Direct Glob. Forwarding, Inc.*, No. 20-CV-1725, 2021 WL 2201554, at *3 (E.D. Wis. June 1, 2021) (internal citations omitted). "This is not to say that it is never appropriate to grant a motion to dismiss under the circumstances presented here." *Aimers*, 2021 WL 2201554, at *3 (citing *Sanders v. Symphony Countryside LLC*, No. 19-cv-2308, 2021 WL 1103479 at *4 (N.D. Ill. Mar. 23, 2021) (citing cases)). Indeed, "a plaintiff's allegations might be so lacking as to suggest no plausible basis for piercing the corporate veil." *Aimers*, 2021 WL 2201554, at *3.

Higgins alleges that "Roberts is the President of Catalyst and the President of Tru. Defendant Roberts regularly exercises the authority to hire and fire employees, set the terms of employment for the Plaintiff, and control the finances and operations of such businesses." (ECF No. 1-1, ¶ 10.) He similarly alleges that "Larsen is the General Manager of Catalyst and General Manager of Tru. Defendant Larsen regularly exercises the authority to hire and fire employees, set the terms of employment for the Plaintiff, and control the finances and operations of such businesses." (*Id.*, ¶ 11.) He also alleges that "[d]efendant Roberts has an ownership interest in Catalyst and Tru. He acts directly and/or indirectly in the interest of [d]efendants in relation to [Higgins]." (*Id.*, ¶ 5.) And, likewise, that "[d]efendant Larsen has an ownership interest in Catalyst and

Tru. He acts directly and/or indirectly in the interest of [d]efendants in relation to [Higgins]." (*Id.*, ¶ 6.)

Higgins's allegations regarding the relationship between Tru and Roberts and Larsen are sparse and conclusory. He alleges that both Roberts and Larsen have some control over Tru but offers little to develop this conclusory assertion. At best, Higgins's allegations suggest the sort of control that any corporate officer would exercise over a corporation's activities and employees. *Cf. Aimers*, 2021 WL 2201554, at *3. More is required to suggest that it is plausible that, with discovery, Higgins would be able to pierce Tru's corporate veil. Therefore, Higgins's breach of contract claims against Roberts and Larsen are dismissed.

### 3.2. Fraud, Fraud in the Inducement, and Negligent Misrepresentation

Higgins alleges that the defendants committed fraud when they "made numerous false representations" to him and "planned to violate the parties' agreement." (ECF No. 1-1, ¶ 50.) He similarly alleges that the defendants fraudulently induced him into quitting his prior job through "false representations to induce [him] to resign from a company where he had worked for over 32 years for their own financial gain." (*Id.*, ¶ 64.) And he alleges that the defendants negligently misrepresented to him that "they intended to pay him an annual salary of $275,000 guaranteed for two years as set forth in his employment agreement." (*Id.*, ¶ 72.)

The defendants argue that Higgins's "tort claims are premised on [d]efendants breaching the alleged employment agreement with [Higgins]." (ECF No. 22 at 7.) Therefore, his tort claims cannot proceed because "the breach of an employment contract is not actionable in tort." (*Id.*) "Simply put: this is not a tort case. Under clear Wisconsin precedent, [Higgins's] recourse—if there is any recourse—is through a potential breach of contract claim." (*Id.*)

Higgins responds by arguing that the "alleged misrepresentation [] occurred before the parties' employment relationship existed." (ECF No. 29 at 11.) He analogizes to *Hartwig v. Bitter*, 29 Wis. 2d 653, 139 N.W.2d 644 (1966), to argue that, because "no employment relationship existed at the time of the misrepresentations," "any duty to refrain from misrepresentation must have existed independently from the performance of an employment contract." (ECF No. 29 at 12 (citing *Hartwig*, 29 Wis. 2d at 658-59, 139 N.W.2d at 647-48).)

In support of their position, in their reply brief the defendants point to the economic loss doctrine. (ECF No. 30 at 4-5.) "The economic loss doctrine 'is a judicially created doctrine that seeks to preserve the distinction between contract and tort.'" *Ferris v. Location 3 Corp.*, 2011 WI App 134, ¶ 12, 337 Wis. 2d 155, 166, 804 N.W.2d 822, 827 (citing *Below v. Norton*, 310 Wis. 2d 713, ¶ 24, 751 N.W.2d 35). "It provides that a party to a contract may not pursue tort remedies to recover solely economic losses arising out of the performance or nonperformance of the contract." *Ferris*, 2011 WI App at ¶ 12, 337

Wis. 2d at 166, 804 N.W.2d at 827 (citing *Below v. Norton*, 297 Wis. 2d 781, ¶ 15, 728 N.W.2d 156). However, the Wisconsin Supreme Court has held that the doctrine does not apply to contracts for services. *See Ins. Co. of N. Am. v. Cease Elec. Inc.*, 2004 WI 139, ¶¶ 22-52, 276 Wis. 2d 361, 371-81, 688 N.W.2d 462, 467-72. Therefore, the economic loss doctrine does not serve as a basis for dismissing Higgins's tort claims.

### 3.2.1. Fraud and Fraud in the Inducement

Higgins must plead fraud and fraud in the inducement claims with particularity. Fed. R. Civ. P. 9(b); *see also* § 1297 Pleading Fraud with Particularity—In General, 5A Fed. Prac. & Proc. Civ. § 1297 (4th ed.) ("Fraudulent inducement claims will often arise in contract disputes under state law and are thus similarly subject to Rule 9(b) when brought in federal court."). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011)).

Higgins alleges fraud and fraud in the inducement against "all defendants"— Catalyst, Tru, Roberts, and Larsen. (*See* ECF No. 1-1 at 8.) He claims that the "[d]efendants made numerous false representations" to him, and that the "[d]efendants intended to violate the parties' agreement because [d]efendants hired someone else to replace him." (*Id.*, ¶¶ 63, 65.) But he does not specify which defendant made those

representations, nor does he describe which defendant intended to or planned to violate the agreement. (*See also id.*, ¶ 50 ("Upon information and belief, the Defendants had planned to violate the parties' agreement.").) Instead, he "lumps" Catalyst, Tru, Roberts, and Larsen together, leaving them without notice of their role in the alleged fraud. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994).

Vaguely attributing the fraud (or fraud in the inducement) to "the defendants"—like Higgins has done here—is insufficient. *Cf. Vicom, Inc.*, 20 F.3d at 778 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). That insufficiency is magnified by the fact that Higgins is asserting his fraud and fraud in the inducement claims against two corporate and two individual defendants. For example, it is unclear whether Higgins is claiming that Roberts and Larsen should be held personally liable for their own tortious conduct or whether he is claiming that they should be held personally liable for Tru's tortious conduct, or vice versa. *Cf. Ferris*, 2011 WI App at ¶¶ 14-16, 337 Wis. 2d at 167-69, 804 N.W.2d at 828 (describing the differences between individual and corporate tort liability). The additional specificity that Higgins offers in his brief (*see* ECF No. 29 at 10-14) does not cure these defects. *See Friso v. Dyncorp Int'l, LLC*, No. 13-C-1351, 2015 WL 1311473, at *2 (E.D. Wis. Mar. 24, 2015) ("[A]rguments in a brief opposing a motion to dismiss do not cure defects in the pleading." (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984))).

In short, Higgins's fraud and fraud in the inducement claims lack the detail necessary to satisfy Rule 9(b). *See Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). Therefore, the defendants' motion to dismiss Higgins's fraud and fraud in the inducement claims is granted. But because insufficient allegations of fraud are "subject to the liberal amendment provisions of Federal Rule of Civil Procedure 15," Higgins will be allowed to amend his complaint to provide additional details to support his fraud and fraud in the inducement claims. *See* § 1300 Consequences of Failing to Plead Fraud or Mistake with Particularity, 5A Fed. Prac. & Proc. Civ. § 1300 (4th ed.).

### 3.2.2. Negligent Misrepresentation

"Negligent misrepresentation is not governed by the heightened pleading standard of Rule 9(b)." *Imagineering Int'l Inc. v. Microsoft Corp.*, No. 09-C-0063, 2009 WL 10676431, at *6 (E.D. Wis. Aug. 11, 2009) (citing *Tricontinental Industries, Ltd. v. PricewaterhouseCoopers*, LLP, 475 F.3d 824, 833 (7th Cir. 2007)). Nevertheless, Higgins still must provide enough detail so to give the defendants fair notice of what his negligent representation claims are and the grounds upon which they rest and show that it is plausible that those claims entitle him to relief. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

The defendants argue that Higgins's negligent misrepresentation claim should be dismissed because it is "'interwoven' with the performance of the alleged performance agreement," and "[a]n alleged statement of material fact giving rise to a

misrepresentation claim must be premised on statements 'extraneous to, rather than interwoven with, the contract.'" (ECF No. 22 at 8 (quoting *Next Millennium Telecom Co. v. American Signal Corp.*, 473 F. Supp. 3d 875, 887-88 (E.D. Wis. 2020)).) Higgins maintains that he has sufficiently plead a claim for negligent misrepresentation. (ECF No. 29 at 14-15.)

The complaint alleges that the defendants "falsely represented" to him "that they intended to pay him an annual salary of $275,000 guaranteed for 2 years as set forth in his employment agreement." (ECF No. 1-1, ¶ 72.) He alleges that the defendants "had a duty to convey truthful information to him" and "breached their duty by failing to exercise due care." (*Id.*, ¶¶ 74-75.) He also alleges that he "justifiably relied on these misrepresentations." (*Id.*, ¶ 76.)

As was the case with his fraud and fraud in the inducement claims, it is impossible to tell who Higgins is alleging made a misrepresentation. Nor is it clear how the defendants acted negligently in making any such misrepresentation. Therefore, Higgins has failed to sufficiently plead a claim for negligent misrepresentation. *Cf. Imagineering Int'l Inc.*, 2009 WL 10676431, at *5 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). Consequently, the defendants' motion to dismiss Higgins's negligent misrepresentation claim is granted, and Higgins's negligent misrepresentation claim is dismissed. However, as with his fraud and fraud

in the inducement claims, Higgins will be allowed to amend his complaint to provide additional details.

### 3.3. Promissory Estoppel

Higgins alleges that the "defendants guaranteed [him] two years of employment at an annual salary of $275,000," and that he "reasonably relied on [that] promise by resigning from company (sic), where he had worked for over 32 years." (ECF No. 1-1, ¶¶ 80-81.) He alleges that his "reliance was expected, foreseeable, and intended on the part of the [d]efendants" and that he was "injured by the [d]efendants' failure to keep these promises." (*Id.*, ¶¶ 82-83.)

The defendants argue that Higgins's promissory estoppel claim should be dismissed because "promissory estoppel arises only when there is not a contract between the parties," and Higgins "pleads that there was an employment agreement between him and [d]efendants." (ECF No. 22 at 10.) Higgins contends that he is allowed to plead alternative theories of liability, so even though he elsewhere alleges that the parties had a contract, his promissory estoppel claim should be allowed to proceed. (ECF No. 29 at 15.)

"[A] party can plead alternative theories of relief under both legal and equitable grounds, even if the theories are inconsistent." *Harley Marine Servs., Inc. v. Manitowoc Marine Grp., LLC*, 759 F. Supp. 2d 1059, 1061 (E.D. Wis. 2010) (citing *Diamond Center, Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F.Supp.2d 1009 (W.D. Wis. 2008)). However, "where a

plaintiff asserts a breach of contract claim and fails to allege any facts from which it could at least be inferred that the contract on which that claim is based might be invalid, the plaintiff is precluded from pleading in the alternative claims that are legally incompatible with the contract claim." *Id.* at 1062–63. Higgins has not alleged any facts from which it could be inferred that the contract between him and the defendants might be invalid. Therefore, Higgins is precluded from pleading a promissory estoppel claim. The defendants' motion to dismiss Higgins's promissory estoppel claim is granted.

### 3.4. Requests for Declaratory Judgment

In addition to an award of damages, Higgins requests

a) Declaratory Judgment that Defendants breached the employment contract they entered with Plaintiff;
b) Declaratory Judgment that Defendants committed Fraud and Fraud in the Inducement;
c) Declaratory Judgment that Defendants committed Negligent Misrepresentation;
d) Declaratory Judgment stopping Defendants from revoking the promise they made to Plaintiff

(ECF No. 1-1, ¶¶ a-b.) The defendants argue that these several requests for declaratory judgment should be dismissed because "this matter is not suited to a declaratory judgment because there is not anything for the court to declare as there is an existing breach of contract claim in this matter." (ECF No. 22 at 11.) Alternatively, they argue that Higgins's claims for declaratory judgment should be dismissed because they are duplicative of his other claims. (*Id.*) Higgins responds that his requests for declaratory

judgment are not duplicative because the defendants "dispute that the parties had an employment contract for definite term." (ECF No. 29 at 16.)

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "It is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Tempco. Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746 (7th Cir. 1987) (citations omitted). "Accordingly, when a declaratory judgment claim is duplicative of or substantially overlaps with another claim, it is within a court's discretion to dismiss it." *345 Prop. Owner, LLC v. United States Postal Serv.*, No. 18-CV-1476, 2019 WL 5068819, at *10 (E.D. Wis. Oct. 9, 2019).

There is significant overlap between Higgins's substantive claims and his requests for declaratory judgment. Accordingly, Higgins's requests for declaratory judgment are dismissed.

## 4. Conclusion

For the reasons explained above, the defendants' motion to dismiss is granted in part and denied in part. It is denied with respect to Higgins's breach of contract claim against Tru but granted as to the other defendants. It is granted with respect to

Higgins's fraud, fraud in the inducement, negligent misrepresentation, and promissory estoppel claims. And it is granted with respect to Higgins's requests for declaratory judgment.

**IT IS THEREFORE ORDERED** that the defendants' motion to dismiss is granted in part and denied in part. The plaintiff's fraud, fraud in the inducement, negligent misrepresentation, and promissory estoppel claims and requests for declaratory judgment are dismissed without prejudice. The plaintiff's breach of contract claim against Catalyst, Roberts, and Larsen is dismissed without prejudice. The plaintiff's breach of contract claim against Tru may proceed.

The clerk will contact the parties to schedule a telephonic scheduling conference. The court will set a deadline for filing amended pleadings at that conference.

Dated at Milwaukee, Wisconsin this 7th day of February, 2022.

WILLIAM E. DUFFIN
U.S. Magistrate Judge